**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
                                                    :
In re:                                              :        Chapter 7
        Heng Li Zhu,                                :
                                                    :
                            Debtor.                 :        Case No. 19-11870-JLG
-----------------------------------------------------------------------x
Jin Zhong Xin and Ruixuan Cui,                      :
                                                    :
                            Plaintiffs,             :        Adv. Pro. No. 19-01358-JLG
                                                    :
        -v-                                         :
                                                    :
Heng Li Zhu,                                        :
                                                    :
                            Defendant.              :
-----------------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS'**
**MOTION TO AMEND FIRST AMENDED COMPLAINT AND**
**GRANTING DEBTOR'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u>**:**

TROY LAW, PLLP
*Counsel for Plaintiffs*
41-25 Kissena Boulevard, Suite 103
Flushing, NY 11355
<u>By:</u>    John Troy, Esq.
        Aaron B. Schweitzer, Esq.


SHI & ASSOCIATES
*Counsel for the Debtor*
401 Broadway, Suite 409
New York, New York 10013
<u>By:</u>    Edward Miller, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**Introduction**[1]

Heng Li Zhu (the "Debtor" or "Defendant") is a chapter 7 debtor herein. Jin Zhong Xin

and Ruixuan Cui (together, the "Plaintiffs") are judgment creditors of the Debtor in the aggregate

amount of $127,612.91 (the "Judgment Debt"). The Plaintiffs were awarded the underlying

Judgment in the District Court Action discussed below. In this adversary proceeding, the

Plaintiffs purport to challenge the dischargeability of the Judgment Debt and to seek to deny the

Debtor his bankruptcy discharge. The Troy Law Firm ("Troy Law") acted as Plaintiffs' counsel

in the District Court Action and represents them in this adversary proceeding. In the Complaint

they filed to commence this action, the Plaintiffs sought a judgment against the Debtor and an

order of the Court determining that the Judgment Debt is excepted from discharge under section

523(a)(6) of the Bankruptcy Code (the "Section 523(a)(6) Claim"). In their First Amended

Complaint—which is the operative complaint—the Plaintiffs added a claim seeking to deny the

Debtor his discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code (the "Section

727(a)(4) Claim").

The Plaintiffs moved pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Rule

15")[2] for leave to file their Proposed Second Amended Complaint (the "Motion to Amend")[3]

---

[1]   Capitalized terms shall have the meanings ascribed to them herein.

[2]   Rule 15 is made applicable herein by Rule 7015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[3]   *See* Notice of Motion for Leave to File Second Amended Complaint, ECF No. 57; Memorandum of Law in Support of Motion for Leave to File Second Amended Complaint, ECF No. 58 ("Plaintiffs' Memo of Law"). References to "ECF No __" herein are to documents filed on the electronic docket in this adversary proceeding No. 19-01358, unless otherwise indicated. A copy of the Proposed Second Amended Complaint is attached to the Plaintiffs' Memo of Law as Exhibit A.

against the Debtor in which they purport to (i) allege a claim for relief against the Debtor challenging the dischargeability of the Judgment Debt under section 523(a)(2) of the Bankruptcy Code (the "Section 523(a)(2) Claim"); and (ii) allege additional facts in support of their Section 523(a)(6) Claim and Section 727(a)(4) Claim.[4] The Debtor opposes the Motion to Amend and has moved to dismiss the complaint (the "Opposition" or "Motion to Dismiss", and together with the Motion to Amend, the "Motions"))[5] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")[6] for failure to state a claim upon which relief can be granted.

For the reasons stated herein, the Court denies Plaintiffs' Motion to Amend and grants the Debtor's Motion to Dismiss.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b), and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Background

The Debtor and his wife jointly own 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine ("Anago") and SUSHI SUKI, INC. d/b/a Sushi Suki ("Sushi Suki"). They operate Anago as a restaurant under the name Anago Sushi Japanese Thai Cuisine located at 240 Eighth Avenue, New York, NY and Sushi Suki as a restaurant under the name Sushi Suki located at 1577 York Avenue, New York, NY 10028. On

---

[4]    As filed, the Motion to Amend seeks leave to add Troy Law as a plaintiff in the Second Amended Complaint. On the record of the July 14, 2022 adjourned hearing on the motion, the Plaintiffs withdrew that request.

[5]    *See* Defendant's Memorandum in Opposition to Plaintiff's Motion to Amend the Complaint and in Support of Cross Motion to Dismiss for failure to State a Claim, ECF No. 61.

[6]    Rule 12(b)(6) is made applicable herein by Bankruptcy Rule 7012.

January 19, 2018, the Plaintiffs commenced an action (the "District Court Action")[7] against the

Debtor, Anago and Sushi Suki and others (collectively, the "District Court Defendants") in the

United States District Court for the Southern District of New York (the "District Court") seeking

damages from the District Court Defendants based on their alleged violations of the Fair Labor

Standards Act ("FLSA") and the New York Labor Law ("NYLL") in the operation of the

restaurants. In broad strokes, in their complaint in support of the District Court Action (the

"District Court Complaint"),[8] the Plaintiffs complained that in violation of the FLSA and NYLL,

the District Court Defendants failed to properly compensate Plaintiffs in accordance with

relevant state and federal laws and failed to provide them with notices and other documents

relating to their jobs called for under applicable laws. As to the former, the Plaintiffs alleged that

at all relevant times, the District Court Defendants knowingly and willfully:

> failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked;

> failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek;

> failed to pay Plaintiffs and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart; and

> failed to keep full and accurate records of Plaintiffs' hours worked and wages paid.

District Court Complaint ¶¶ 41-45. They maintained that the Debtor failed to keep full and

accurate records in order to mitigate liability for wage violations, and that he knew that the

nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half

---

[7]  *See* Jin Zhong Xin and Ruixuan Cui v. 1A Royal Thai Cuisine & 1A Anago Sushi Inc., *et al.*, No. 1:17-cv-10240-GHW (S.D.N.Y.).

[8]  *See* Complaint, Jin Zhong Xin and Ruixuan Cui v. 1A Royal Thai Cuisine & 1A Anago Sushi Inc., *et al.*, No. 1:17-cv-10240-GHW (S.D.N.Y. Jan. 9, 2018), ECF No. 2.

time (1.5x) employees' regular rates violated state and federal laws and would financially injure

Plaintiffs and similarly situated employees. *See id.* ¶¶ 46, 49.

They also alleged that at all relevant times, the District Court Defendants failed to post

the required New York State Department of Labor posters regarding minimum wage pay rates,

overtime pay, and pay day. *See id.* ¶ 50. They asserted that the District Court Defendants:

> failed to provide Plaintiffs and similarly situated employees with Time of Hire
> Notices in their primary languages reflecting rates of pay and payday as well as
> paystubs that listed the employee's name, the employer's name, the employer's
> address and telephone number, the employee's rate or rates of pay, any deductions
> made from employees' wages, any allowances claimed as part of the minimum
> wage, and the employee's gross net wages for each pay day; and

> failed to provide Plaintiffs and similarly situated employees with statements every
> payday that accurately listed all of the following: the dates of work covered by that
> payment of wages; the employee's name; the name of the employer; the address
> and phone number of the employer; the employee's rate or rates of pay and basis
> thereof; the employee's gross wages; the employee's deductions; allowances, if
> any, claimed as part of the minimum wage; net wages; the employee's regular
> hourly rate or rates of pay; the employee's overtime rate or rates of pay; the
> employee's number of regular hours worked, and the employee's number of
> overtime hours worked.

*Id.* ¶¶ 48-49.

On June 4, 2019, following a jury trial in the District Court Action, the jury (the "Jury")

returned a verdict in favor of the Plaintiffs against the Debtor and Anago. The verdict did not

establish any liability of Sushi Suki.[9] The Jury's Verdict Forms contain findings of fact relating

to: (i) the period of Plaintiffs' employment by Anago and the average weekly number of hours

---

[9]    Copies of the Verdict Form As To Ruixuan Cui and Verdict Form As To Jin Zhong Xin (together, the "Verdict Forms") are annexed as Exhibit 2 and Exhibit 3, respectively, to the First Amended Complaint.

5

Plaintiffs worked at Anago;[10] (ii) the wages paid by the Debtor to the Plaintiffs;[11] and (iii) the

Debtor's failure to provide pay stubs and adequate wage notices to the Plaintiffs.[12] The Jury also

found that the Debtor and Anago did not act in good faith when they (a) failed to pay Plaintiffs

the applicable minimum wage, adequate overtime wages and spread of hours pay and (b) failed

to provide adequate pay stubs and wage notices. The District Court calculated the damages

against the Debtor and Anago in light of the Jury's verdict and entered a judgment against the

---

[10]   As relevant, the Jury found:

> Plaintiff Ruixuan Cui was employed at Anago between March 1, 2017 and May 10, 2017;

> Plaintiff Jin Zhong Xin was employed at Anago between January 30, 2017 and August 13, 2017;

> Plaintiffs each worked on average 10.5 hours per day;

> Plaintiffs each worked on average six days per week;

> Plaintiffs each worked on average 63 hours per week; and

> Plaintiffs each worked on average 23 hours overtime per week.

[11]   As relevant, the Jury found:

> Plaintiffs were each paid a flat rate of $1,100 per month, resulting in a regular rate of pay of $6.35 per hour each;

> Plaintiffs were each not paid at least the minimum wage by Anago;

> Plaintiffs were each not properly compensated for their overtime hours by Anago; and

> Plaintiffs were each not properly compensated for his "spread of hours" by Anago.

[12]   As relevant the Jury found:

> Plaintiff Ruixuan Cui was not provided with a full and accurate pay stub each payday for eight of the ten weeks he was employed by Anago;

> Plaintiff Jin Zhong Xin was not provided with a full and accurate pay stub each payday for all twenty-eight weeks he was employed by Anago.

Debtor and Anago jointly and severally in the aggregate amount of $127,612.91 (the

"Judgment"),[13] as follows:

> The Judgment awarded Jin Zhong Xin damages in the sum of $54,242.26,
> consisting of:
>
> > (A) compensatory damages for unpaid wages in the amount of
> > $17,682; (B) liquidated damages for unpaid wages under the New
> > York Labor Law in the amount of $17,682; (C) statutory damages
> > for violation of New York Labor Law § 195 in the amount of
> > $10,000; and (D) pre-judgment interest calculated at the rate of 9%
> > per annum and totaling $8,878.26.
>
> *See* Judgment at 2. The Judgment awarded Ruixuan Cui damages in the sum of
> $24,143.61, consisting of
>
> > (A) compensatory damages for unpaid wages in the amount of
> > $6,315; (B) liquidated damages for unpaid wages under the New
> > York Labor Law in the amount of $6,315; (C) statutory damages for
> > violation of New York Labor Law § 195 in the amount of $7,400;
> > and (D) pre-judgment interest calculated at the rate of 9% per annum
> > and totaling $4,113.61.
>
> *See id.* The Jury awarded to the Plaintiffs their attorney fees in the amount of
> $45,656.45 and costs in the amount of $3,570.59. *See id.*

On June 6, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief

under chapter 7 of the Bankruptcy Code (the "Bankruptcy Case") in this Court.[14]

On June 9, 2020, the Clerk of the Bankruptcy Court (the "Clerk") sent notices to twenty-

three interested parties, including Troy Law, as Plaintiffs' counsel in the District Court Action,

setting July 10, 2019, as the first date for the 341(a) Meeting of Creditors. The notice also

advised that the last day to object to the Debtor's discharge under section 727 of the Bankruptcy

---

[13]   *See* Judgment, *Jin Zhong Xin and Ruixuan Cui v. 1A Royal Thai Cuisine & 1A Anago Sushi Inc., et al.*, No. 1:17-cv-10240-GHW, ECF No. 113. A copy of the Judgment is attached as Exhibit 1 to the First Amended Complaint.

[14]   *See* Official Form 101 Voluntary Petition for Individuals Filing for Bankruptcy, No. 19-11870 (Bankr. S.D.N.Y. June 6, 2019), ECF No. 1.

Code, or to the dischargeability of particular claims under section 523 of the Bankruptcy Code was September 9, 2019 (the "Discharge Objection Deadline").[15]

On June 10, 2019, Deborah Piazza (the "Chapter 7 Trustee") was appointed as chapter 7 trustee.

On June 18, 2019, the Plaintiffs filed three proofs of claim in the Bankruptcy Case, as follows:

> Claim 1-1 was filed on behalf of Plaintiff Jin Zhong Xin in the amount of $54,242.26.
>
> Claim 2-1 was filed on behalf of Plaintiff Ruixuan Cui in the amount of $24,143.61.
>
> Claim 3-1 was filed on behalf of Troy Law in the amount of $49,227.04.[16]

On August 30, 2019, the Debtor, the Chapter 7 Trustee, and the U.S. Trustee entered into a stipulation (the "Limited Section 727 Stipulation") extending the Discharge Objection Deadline for the Chapter 7 Trustee and the U.S. Trustee, to file objections to the Debtor's discharge under section 727 to December 10, 2019 (the "Extended Section 727 Objection Deadline").[17] The Plaintiffs are not parties to the Limited Section 727 Stipulation, or any other

---

[15]    *See* Official Form 309A (For Individuals or Joint Debtors) Notice of Chapter 7 Bankruptcy Case, No. 19-11870 (Bankr. S.D.N.Y. June 10, 2019), ECF No. 4.

[16]    This case was filed as a no-asset case. On August 15, 2019, the Chapter 7 Trustee filed a letter notifying parties in interest of a "proposed asset" in this case for distribution to creditors and requesting the Clerk establish a deadline for filing proofs of claim. *See* Trustee's Request for Clerk's Entry of Notice of Possible Dividends and Request for a Bar Date, No. 19-11870 (Bankr. S.D.N.Y. Aug. 10, 2019), ECF No. 13. That same day, the Clerk established a deadline of November 18, 2019 to file proofs of claim in this case. *See* Notice of Possible Payment of Dividends and of Last Date to File Claims, No. 19-11780 (Bankr. S.D.N.Y. Aug. 15, 2019), ECF No. 14. Troy Law has since withdrawn Claim 3-1. No other creditor filed a proof of claim.

[17]    *See* Stipulation and Order Extending Trustee's and the United States Trustee's Time to Object to the Debtor's Discharge and File a Motion Pursuant to 11 U.S.C. § 707, No. 19-11870 (Bankr. S.D.N.Y. Aug. 30, 2019), ECF No. 22.

stipulation or agreement extending their deadline to object to the Debtor's discharge, or to the discussion dischargeability of their claims, beyond September 9, 2019.

On September 9, 2019, the Discharge Objection Deadline lapsed for all interested parties other than the Chapter 7 Trustee and the U.S. Trustee.

On September 15, 2019, Troy Law, as counsel to the Plaintiffs, commenced this adversary proceeding by filing a one-count complaint (the "Complaint")[18] on behalf of the Plaintiffs against the Debtor. The sole form of relief that the Plaintiffs seek in the bare-bones Complaint is to except the Judgment Debt from discharge under section 523(a)(6) of the Bankruptcy Code. *See* Complaint ¶¶ 8-12.

On September 30, 2019, the Debtor filed an answer to the Complaint, denying all allegations in the Complaint and asserting various affirmative defenses.[19]

On December 5, 2019, the Debtor, the Chapter 7 Trustee, and the U.S. Trustee agreed to further extend the Extended Section 727 Objection Deadline for the Chapter 7 Trustee and the U.S. Trustee to March 10, 2020.[20]

On January 13, 2020, the Plaintiffs filed an amended complaint (the "First Amended Complaint")[21] that adds the Section 727(a)(4) Claim to the Section 523(a)(6) Claim alleged in the Complaint. *See* First Amended Complaint ¶¶ 13-20. In part, in support of the First Amended Complaint, the Plaintiffs allege that:

---

[18]   *See* Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6), ECF No. 1.

[19]   *See* Verified Answer, ECF No. 3 (the "Answer").

[20]   *See* Stipulation and Order Further Extending Trustee's and the United States Trustee's Time to Object to the Debtor's Discharge, No. 19-11870 (Bankr. S.D.N.Y. Dec. 5, 2019), ECF No. 29.

[21]   *See* First Amended Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6), § 727(A)(4)(A), ECF No. 12.

(i)     Defendant misrepresented his ownership value in Anago when he
        disclosed in his schedules that the value of his 50% interest in Anago is
        $0.00, which the Plaintiffs contend is "not possible for a corporation that
        is still active, and the restaurant is still operating." *See* First Amended
        Complaint ¶ 15-16.

(ii)    Defendant failed to disclose his ownership of Sushi Suki. *See id.* ¶¶ 17-18;
        *see also id.* Ex. 4.

(iii)   Defendant had a practice of paying Anago's employees, including
        Plaintiffs, under the table in cash. *See id.* ¶ 19.

On January 22, 2020, the Debtor filed an answer to the First Amended Complaint in

substantially the same form as his Answer to the Complaint.[22]

On March 3, 2020, the Debtor, the Chapter 7 Trustee, and the U.S. Trustee agreed to

further extend the Extended Section 727 Objection Deadline for the Chapter 7 Trustee and the

U.S. Trustee to June 10, 2020.[23]

On June 10, 2020, the Extended Section 727 Objection Deadline lapsed. Neither the

Chapter 7 Trustee, nor the U.S. Trustee objected to the Debtor's discharge under section 727 of

the Bankruptcy Code.

On October 28, 2020, at the request of the Clerk, the Court issued the Order of Discharge

under section 727 of the Bankruptcy Code (the "Discharge Order").[24] On that day the Clerk

mailed Notice of the Discharge Order to each Plaintiff, "c/o Troy Law."[25]

---

[22]   *See* Verified Answer to Amended Complaint, ECF No. 14 (the "Amended Answer").

[23]   *See* Stipulation and Order Further Extending Trustee's and the United States Trustee's Time to Object to the
       Debtor's Discharge, No. 19-11870 (Bankr. S.D.N.Y. Mar. 3, 2020), ECF No. 36.

[24]   *See* Order of Discharge, ECF No. 50.

[25]   *See* Certificate of Notice, ECF No. 51.

## The Motions

In the Motion to Amend, Plaintiffs seek leave pursuant to Rule 15(a) to file the Proposed Second Amended Complaint to add the new Section 523(a)(2) Claim; to add "comprehensive allegations" against the Debtor in support of the Section 523(a)(6) Claim; and to add "comprehensive allegations" against the Debtor in support of the Section 727(a)(4) Claim. *See* Motion to Amend at 1, 3. Plaintiffs attach a copy of the Judgment (Exhibit 1) and copies of the Verdict Forms with respect to Ruixuan Cui (Exhibit 2) and Jin Zhong Xin (Exhibit 3), as exhibits to the Proposed Second Amended Complaint, which collectively are attached as Exhibit C to the Plaintiffs' Memo of Law in support of the Motion to Amend.

The Debtor opposes the Motion to Amend and moves to dismiss the First Amended Complaint pursuant to Rule 12(b)(6). *See* Opposition at 3. The Debtor argues that the Court should deny the Motion to Amend, as futile, because the Proposed Second Amended Complaint fails to allege facts demonstrating that the Plaintiffs are entitled to relief under section 523(a)(2)(A), 523(a)(6) or 727(a)(4) of the Bankruptcy Code. *See id.* at 7-8, 10. He contends that the Court should dismiss the First Amended Complaint because neither the Section 523(a)(6) Claim nor the Section 727(a)(4) Claim states a claim for relief against him. *See id.*

The Court considers those matters below.

## Legal Standards

### Federal Rule 15

Rule 15 allows a party to amend its pleading once as a matter of right before a responsive pleading is served or, if no responsive pleading is permitted and the case has not yet been placed on the trial calendar, within twenty days after the pleading is served. *See* Fed. R. Civ. P. 15(a). Thereafter, absent written consent from the opposing party, leave to amend must be obtained

from the court. *See id*; *see also Rachman Bag Co. v. Liberty Mut. Ins. Co*., 46 F.3d 230, 234–35 (2d Cir. 1995) ("Under the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of right before a responsive pleading is served or, if no responsive pleading is permitted and the case has not yet been placed on the trial calendar, within twenty days after the pleading is served. After that point, absent written consent from the opposing party, leave to amend must be obtained from the district court."). Rule 15(a) specifies that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."). Accordingly, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., etc.—the leave sought should, as the rules require, be 'freely given.'" *Rachman Bag Co. v. Liberty Mut. Ins. Co*., 46 F.3d at 234–35 (citing *Foman v. Davis*, 371 U.S. at 182); *see also State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.").

A motion to amend may be denied if the proposed amendment would be futile. *See Asset Value Fund Ltd. P'ship v. The Care Grp., Inc.*, 179 F.R.D. 117, 118 (S.D.N.Y. 1998); *see also Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) ("[A] motion for leave to amend a complaint may be denied when amendment would be futile.") (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)). It is well settled that an amendment to a complaint is futile if, as amended, the complaint will not state a claim for relief. *See Dougherty v. Town of N. Hempstead*

*Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."); *Martin v. Dickson*, 100 Fed. Appx. 14, 16 (2d Cir. 2004) ("A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6).") (citation omitted).

Pursuant to Rule 12(b)(6), a party may move to dismiss a pleading for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The Debtor purports to file its Motion to Dismiss pursuant to Rule 12(b)(6). However, Rule 12(b) states that the defense of failure to state a claim "shall be made before pleading if a further pleading is permitted." Fed. R. Civ. P. 12(b). Because the Debtor filed his Amended Answer to the First Amended Complaint, his Motion to Dismiss under Rule 12(b)(6) is untimely. *See In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 839 (Bankr. S.D.N.Y. 2014); *see also Tyco Int'l Ltd. v. Walsh*, No. 02 Civ. 4633 (DLC), 2003 WL 553580, at *2 (S.D.N.Y. Feb. 27, 2003) ("A motion based on [Rule 12(b)] is therefore untimely when it is served after the answer."). Rule 12(h) preserves the defense of failure to state a claim by providing a defendant the ability to raise the defense "by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2). *See Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("Rule 12(h)(2) states that [a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted . . . or by motion for judgment on the pleadings, or at the trial on the merits.") (internal quotation marks omitted). The "standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) ("The test for evaluating a [motion for judgment on the pleadings] is the same as that

applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6).") (quoting *Irish Lesbian &*

*Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)). Accordingly, courts faced with a

motion to dismiss for failure to state a claim styled as arising under Rule 12(b) but which is filed

after the close of pleadings construe such a motion as one for judgment on the pleadings under

Rule 12(c), applying the same standard. *See Ezra v. Bristol-Myers Squibb Co.*, 784 Fed. Appx.

48, 49 (2d Cir. 2019); *Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931 (RJS), 2009 WL 928279, at *8

(S.D.N.Y. Mar. 30, 2009); *Altman v. Incorporated Village of Lynbrook*, No. CV 18-4984 (SJF)

(AKT), 2020 WL 4587751, at *9 (E.D.N.Y. Mar. 31, 2020). *Cf. Moore v. Shahine*, No. 18 Civ.

463 (AT) (KNF), 2019 WL 948349, at *1 (S.D.N.Y. Feb. 27, 2019) (dismissing Rule 12(b)(6) as

untimely but considering arguments under Rule 12(c)). The Court, therefore, construes the

Debtor's Motion to Dismiss as a motion for judgment on the pleadings under Rule 12(c).

Under Rule 12(c), "a party is entitled to judgment on the pleadings only if it has

established that no material issue of fact remains to be resolved and that [it] is entitled to

judgment as a matter of law." *Bailey v. Pataki*, No. 08-CV-8563, 2010 WL 234995, at *1

(S.D.N.Y. Jan 19, 2010) (quotation marks and citations omitted). To overcome a Rule 12(b)(6)

motion, the plaintiff must demonstrate that the complaint "contain[s] sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing

*Twombly*, 550 U.S. at 556). However, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*; *see also Papasan v. Allain*, 478

U.S. 265, 286 (1986) (noting that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").

In adjudicating a Rule 12(c) motion, a court "considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the background of the case." *L-7 Designs, Inc. v. Old Navy,* LLC, 647 F.3d 419, 422 (2d Cir. 2011). For documents to be incorporated by reference, "the [c]omplaint must make a clear, definite and substantial reference to the documents." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).

Sections 727 and 523 of the Bankruptcy Code

The goal of the Bankruptcy Code is to provide the "honest debtor" with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preëxisting debt." *In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). To that end, section 727(a) of the Bankruptcy Code provides that the court shall grant a discharge to an individual chapter 7 debtor unless one or more of the grounds for denial of discharge listed in subsections (a)(1) through (12) are established. *See* 11 U.S.C. § 727(a). Those provisions are enforced through section 727(c)(1), which vests the right in "[t]he trustee, a creditor, or the United States trustee [to] object to the granting of a discharge under subsection (a) of this section." 11 U.S.C. § 727(c)(1); *see also In re Cestaro*, 598 B.R. 520, 529 (Bankr. D. Conn. 2019) ("Courts uniformly hold that a plaintiff that is not a creditor lacks standing to object to discharge under § 727(a).") (quotation marks and citation omitted) (collecting cases); *In re Graziano*, 35 B.R. 589, 593 (Bankr. E.D.N.Y. 1983) ("[S]o long as an entity has a claim against the debtor, as distinguished from a claim against the debtor's estate, that entity may commence a proceeding to determine the dischargeability of a debt."). Section 727 "imposes an extreme penalty for wrongdoing[,]" such that, "it must be

15

construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting *In re Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976)). A discharge under section 727(a) discharges the debtor from all pre-petition debts "except as provided in section 523" of the Bankruptcy Code. *See* 11 U.S.C. § 727(b). "In other words, section 727(a) discharges a debtor from all pre-petition debts, while section 523(a) limits the effect of a discharge that has been entered." *In re Sharma*, No. 12–14472 (SCC), 2014 WL 5714494, at *6 (Bankr. S.D.N.Y. Nov. 4, 2014) (citation omitted).

Section 523(a) of the Bankruptcy Code sets forth a variety of grounds upon which the court may deny the discharge of a particular claim of a particular creditor against the debtor. *See In re Hass*, 273 B.R. 45, 49 (Bankr. S.D.N.Y. 2002) ("Objection to dischargeability under Section 523(a) must always be brought by the particular creditor whose debt is claimed to be non-dischargeable."); *see also* Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of dischargeability of any debt."). A judgment of non-dischargeability under section 523(a) benefits only the debt owed to the particular creditor who objected to dischargeability and has no impact on claims of other creditors. *See In re Hass*, 273 B.R. at 49. Section 523(c) provides for the discharge of any debt of a kind specified in section 523(a)(2), (4) or (6) unless the court, on request of a creditor and after notice and a hearing, determines the debt to be nondischargeable under paragraph (2), (4) or (6), as the case may be, of section 523(a). 11 U.S.C. § 523(c). In keeping with the Bankruptcy Code's fresh start policy, courts construe the exceptions enumerated in section 523 narrowly against the creditor in favor of the debtor. *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007) (citing *Nat'l Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996)). In

furtherance of that objective, "[a] creditor seeking to establish nondischargeability under § 523(a) must do so by the preponderance of the evidence." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (citing *Grogan v. Garner,* 498 U.S. 279, 291 (1991)).

A complaint objecting to a debtor's bankruptcy discharge or determining the dischargeability of a claim must be filed within 60 days of the first date for the meeting of creditors under section 341(a) of the Bankruptcy Code. *See* Fed. R. Bankr. P. 4004(a) ("In a chapter 7 case, a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)."); Fed. R. Bankr. P. 4007(c) ("[A] complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)."). By motion filed within the 60-day period, and for cause shown, the Court may extend the 60-day periods in Rules 4004(a) and 4007(c). *See* Fed. R. Bankr. 4004(b)(1); Fed. R. Bankr. P. 4007(c). Further, the deadlines cannot be extended under the general rule allowing a court to enlarge the time for taking any action under the Bankruptcy Rules. *See* Fed. R. Bankr. P. 9006(b)(3) ("The court may enlarge the time for taking action under Rules . . . 4004(a) [and] 4007(c) . . . only to the extent and under the conditions stated in those rules.").

## Discussion

There are two matters to consider before addressing the merits of the Motions. The Discharge Objection Deadline is September 9, 2019, and the Plaintiffs did not commence this adversary proceeding until September 15, 2019, when Troy Law, as counsel to the Plaintiffs, filed the one-count Complaint challenging the dischargeability of the Judgment Debt in the Section 523(a)(6) Claim. The Plaintiffs did not challenge the Debtor's discharge until January 13, 2020, when Troy Law filed the First Amended Complaint that adds the Section 727(a)(4)

Claim to the Section 523(a)(6) Claim alleged in the Complaint. Neither party raised the

timeliness of this action in the papers submitted in support of and in opposition to the Motions.

Nor did they address the impact of the Court's October 28, 2020 Discharge Order on the

Plaintiffs claims for relief in the adversary proceeding. The Court *sua sponte* raised both issues

with the parties and gave them leave to submit supplemental briefs addressing those issues. Both

parties submitted additional pleadings.[26]

    In his supplemental brief, the Debtor argues that the time limits set forth in Rule 4007(c)

are "mandatory and jurisdictional" and that the Court must dismiss the First Amended Complaint

because of Plaintiffs' failure to file it by the Discharge Objection Deadline. *See* Def.'s Suppl.

Mem. at 1 (citing *In re Dollar*, 257 B.R. 364 (Bankr. S.D. Ga. 2001) and *Matter of Sablone*, 157

B.R.739 (Bankr. D. Conn. 1993)).[27] The Second Circuit, however, examining the split in

authority has found that the "time period imposed by Rule 4007(c) is not jurisdictional and thus

---

[26]    *See* Supplemental Memorandum in Support of Motion for Leave to File Second Amended Complaint, ECF No.
86 (the "Pl.'s Suppl. Mem."); Supplemental Memorandum in Support of Defendant's Motion to Dismiss and
Opposition to Plaintiff's Motion to Amend Complaint, ECF No. 88 (the "Def.'s Suppl. Mem.").

[27]    In *In re Dollar*, the bankruptcy court denied approval of a settlement between a creditor and the debtor to permit
the creditor to amend his complaint objecting to the debtor's discharge under section 727(a)(2) to remove the section
727 claim and add a claim seeking the nondischargeability of its debt pursuant to section 523(a)(6). Approval of the
settlement was sought after the deadline to file a complaint under section 523(c) had passed. Reasoning that
allowing a creditor to extract from the debtor a post-bar date section 523 exception to dischargeability in exchange
for avoiding a complete denial of discharge would be an abuse of the bankruptcy process, because the creditor
would benefit at the expense of all other creditors and the debtor would avoid denial of his discharge, the court
found that "[d]etermining the bar date is jurisdictional reduces the potential for this abuse of the bankruptcy
process." *In re Dollar*, 257 B.R. at 366-67 (quoting *In re Ginn*, 179 B.R. 349 (Bankr. S.D. Ga. 1995)).

    In *Matter of Sablone*, the court only found that it lacked discretion to grant a motion to reopen the case for the
purpose of allowing a creditor to file a motion extending its time to file a complaint objecting to the debtors'
discharge because the "court's authority to extend the involved bar dates ended with the passage of the bar dates."
*See Matter of Sablone*, 157 B.R. 739, 741 (Bankr. D. Conn. 1993).

    Moreover, the question in those cases—whether the court may grant a creditor's motion extending their time to
file a complaint under section 727 or section 523(c) or otherwise permit it to file an untimely complaint—is not at
issue here. Here, Plaintiffs have already filed an untimely complaint and the Court must determine whether it must
dismiss the complaint or whether the Debtor has waived its objections to the timeliness of the Complaint based on
his failure to raise the issue until prompted by the Court.

18

is subject to waiver, estoppel, and equitable tolling." *European Am. Bank v. Benedict (In re

Benedict)*, 90 F.3d 50, 54 (2d Cir. 1996) ("The Supreme Court has stated that '[s]tatutory filing

deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling.' There

is nothing in the Bankruptcy Code that persuades us to hold that Rule 4007(c) is any different

from a statutory provision that imposes a filing deadline.") (internal citations omitted) (citing

*United States v. Locke*, 471 U.S. 84, 94 n. 10 (1985)). As the court explained in *In re Dombroff*,

> [t]he Bankruptcy Rules, unlike the Federal Rules of Appellate Procedure, are not
> promulgated under the Rules Enabling Act. The Supreme Court derives its
> authority to promulgate rules for the bankruptcy courts under 28 U.S.C. § 2075
> which, unlike the Rules Enabling Act, contains no language providing that
> bankruptcy rules supersede conflicting prior statutes. This suggests that the
> Bankruptcy Rules are rules only, having no statutory effect, and that the time for
> filing a complaint objecting to discharge is not jurisdictional.

*In re Dombroff*, 192 B.R. 615, 621 (S.D.N.Y. 1996); *see also In re Ramsoomair*, No. 21-11215

(DSJ), 2022 WL 828307, at *5 (Bankr. S.D.N.Y. Mar. 18, 2022) ("Rule 4007(c) is not

jurisdictional. Rather, as statutory filing deadline, it is subject to the defenses of waiver, estoppel,

and equitable tolling.") (internal citations omitted) (citing *In re Benedict*, 90 F.3d at 54)); *In re

Steiner*, 209 B.R. 281, 285 (Bankr. E.D.N.Y. 1996) (agreeing with the analysis set forth in *In re

Dombroff*). The Supreme Court, examining the issue at it relates to Rule 4004(a)—setting forth

the time period within which a complaint objecting to a debtor's discharge must be filed—came

to the same conclusion. *See Kontrick v. Ryan*, 540 U.S. 443, 447 (2004) ("We agree that Rule

4004 is not 'jurisdictional.' Affirming the judgment of the Court of Appeals for the Seventh

Circuit, we hold that a debtor forfeits the right to rely on Rule 4004 if the debtor does not raise

the Rule's time limitation before the bankruptcy court reaches the merits of the creditor's

objection to discharge.").[28] Accordingly, contrary to the Debtor's contention, the deadlines set

---

[28]    In finding that the debtor forfeited its objections to the timeliness of the plaintiff's complaint, the Supreme
Court noted that, while the terms "waiver" and "forfeiture" are often used interchangeably, the issue in that case was

forth in Rules 4004(a) and 4007(c), while inflexible, are not "mandatory and jurisdictional" and are subject to equitable defenses such as waiver. *See In re Dombroff*, 192 B.R. at 621 ("[That] the Rule 4004(a) deadline is not jurisdictional does not alter the principle that the Rule's deadlines are to be interpreted strictly and in a manner consistent with the Code's policies in favor of providing a fresh start for the debtor and prompt administration of the case.") (citing *Taylor v. Freeland & Kranz*, 938 F.2d 420 (3d Cir. 1991), *aff'd*, 503 U.S. 638 (1992)); *see also In re Dizon*, No. 09-15351 (ALG), 2010 WL 958070, at *1 (Bankr. S.D.N.Y. Mar. 12, 2010) ("[C]ases in this Circuit since *Benedict* have drawn a hard line in enforcing Bankruptcy Rule 4007(c), even describing it as 'being set in stone.'") (citing *Gattalaro v. Pulver (In re Pulver)*, 327 B.R. 125, 136 (Bankr. W.D.N.Y. 2005)).

"Waiver is generally defined as an intentional relinquishment of a known right." *In re Benedict*, 90 F.3d at 55. "Waiver may be express of implied from the conduct of a party." *In re Gonzalez*, 241 B.R. 67, 75 (S.D.N.Y. 1999). Forfeiture is the "failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 731 (citing *Yakus v. United States*, 321 U.S. 414, 444 (1944)); *see also Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006); *Don King Prods., Inc. v. World Boxing Assoc.*, 21 Civ. 4885 (AKH), 2022 WL 2133751, at *1 (S.D.N.Y. June 14, 2022).

Federal Rule of Civil Procedure 8(c)[29] requires parties to raise affirmative defenses in the pleadings. *See* Fed. R. Civ. P. 8(c). On September 30, 2019 and January 22, 2020, the Debtor

---

"more accurately described as one of forfeiture rather than waiver." *Kontrick v. Ryan*, 540 U.S. at 458 n.13 (citing *United v. Olano*, 507 U.S. 725, 733 (1993)); *see also Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) ("Initially, we note that the issue [of whether the defendant has waived the defense of lack of personal jurisdiction] is more properly considered one of forfeiture than of waiver. The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate.").

[29]   Rule 8(c) is made applicable herein by Bankruptcy Rule 7008(a).

filed answers to the Complaint and the First Amended Complaint, respectively, without asserting

the affirmative defense of timeliness based on Rules 4004(a) and 4007(c), or a statute of

limitations defense. *See Kontrick v. Ryan*, 540 U.S. at 456 (stating that the "claim-processing

rules" such as Bankruptcy Rules 4004(a) "afford the debtor an affirmative defense to a complaint

filed outside the [time] limits"); *see also In re Santos*, 112 B.R. 1001, 1008 (B.A.P. 9th Cir.

1990) ("[T]he timeliness of a dischargeability complaint presents an affirmative defense that

must be raised in an answer or responsive pleading.") (citation omitted). The Debtor's failure to

assert the defense in his answers, however, is not dispositive. *See American Federal Grp., Ltd. v.

Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998) ("[W]aiver [of an unpleaded defense] may not be

proper where the defense is raised at the first pragmatically possible time and applying it at that

time would not unfairly prejudice the opposing party."); *see also Rose v. Amsouth Bank of Fla.*,

391 F.3d 63, 65 (2d Cir. 2004) (same); *Wiwa v. Royal Dutch Petroleum Co.*, No. 01 Civ. 1909

(KMW) (HBP), 2009 WL 464946, at *4 (S.D.N.Y. Feb. 25, 2009) (same). In considering

whether a failure to timely raise a defense based on Rules 4004(a) and 4007(c) should constitute

a waiver, the Bankruptcy Appellate Panel of the Ninth Circuit set forth five factors courts should

consider, including:

> 1) the obviousness of the defense's availability, 2) the stage of the proceeding at
> which the defense is raised, 3) the time which has elapsed between the filing of the
> answer and the raising of the defense, 4) the amount of time and effort expended
> by the plaintiff in the case at the time the defense is raised, and 5) the prejudice
> resulting to the plaintiff which would result from allowing the defense to be
> asserted.

*In re Santos*, 112 B.R. at 1008.

Here, the first pragmatically possible time the Debtor could have brought up the defense

of timeliness, if not in his answers, were in response to the filing of Plaintiffs' First Amended

Complaint on January 13, 2020. However, the Debtor never objected to that filing. Moreover, the

Debtor could have raised the argument in his Opposition to the Motion to Amend, but similarly

failed to do so. The Debtor also failed to raise the argument in the very Motion to Dismiss at

issue now. It was not until the Court raised the issue *sua sponte*, nearly three years after the filing

of the Complaint that the Debtor purported to assert the defense in its supplemental brief the

Court requested to address the timeliness issue. The parties have expended a considerable

amount of time and resources litigating this matter, even having participated in discovery. The

Debtor had multiple opportunities to raise the defense and failed to raise it. Clearly, Plaintiffs

would be prejudiced by allowing the Debtor, at this stage of the proceedings, to assert the

defense. Therefore, the Court finds that the Debtor has forfeited the timeliness defense. *See In re*

*Benedict*, 90 F.3d at 55 (finding that the debtor waived her right to object to the expiration of the

deadline date when it entered into stipulation extending time for creditor to object); *see also In re*

*Steiner*, 209 B.R. at 284 (same); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d at 62 (finding defense

of lack of personal jurisdiction forfeited by defendant where three years passed, with

considerable pretrial activity, and defendant had "several clear opportunities to do so").

Plaintiffs run into a second issue. On October 28, 2020, the Court entered the Discharge

Order, granting him a discharge in bankruptcy, implicating their Section 727(a)(4) Claim. As

relevant, Bankruptcy Rule 4004 states that after the 60-day deadline stated therein expires, the

court "shall forthwith grant the discharge, except that the court shall not grant the discharge if: . .

. a complaint . . . objecting to the discharge has been filed and not decided in the debtor's favor."

Fed. R. Bankr. P. 4004(c)(1)(B). This adversary proceeding was pending on October 28, 2020,

when the Court entered the Discharge Order. There was a clerical error in doing so, and the

Court erroneously entered that order in violation of Rule 4004. Bankruptcy Rule 9024 makes

Rule 60 of the Federal Rules of Civil Procedure applicable in bankruptcy cases. *See* Fed. R.

Bankr. P. 9024.[30] Rule 60 authorizes bankruptcy courts to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a); *see also Lee v. Joseph E. Seagram & Sons, Inc.*, 592 F.2d 39 (2d Cir. 1979) ("[Rule 60] on its face applies only to Clerical mistakes and errors in judgments arising from oversight or omission."); *Employers Mut. Cas. Co. v. Key Pharm., Inc.*, 886 F. Supp. 360 (S.D.N.Y. 1995) ("The purpose of Rule 60(a) is to afformed courts a means of modifying their judgments in order to ensure that the record reflects the actual intentions of the court and the parties."); *Filice v. United States (In re Filice)*, 580 B.R. 259, 271 (Bankr. E.D. Cal. 2018) ("Rule 60(a) mistakes are blunders in execution that do not constitute a court changing its mind about what it originally intended to do.") (internal quotation marks and citations omitted). The clerical error in entering the Discharge Order provides grounds under Rule 60(a) to vacate that order. *See In re Toledano*, 322 B.R. 78, 84 (Bankr. S.D.N.Y. 2005) (vacating Order of Final Decree denying debtor his discharge where no objections to discharge were pending); *Tucker Leasing Capital Corp. v. Farber*, 882 F. Supp. 1290 (E.D.N.Y. 1995) (vacating judgment which inadvertently excluded post-decision interest to which plaintiff was entitled); *In re Filice*, 580 B.R. at 272 (*sua sponte* vacating discharge order mistakenly entered in violation of section 727(a)(8)). Accordingly, the Court vacates the Discharge Order. In so doing,

---

[30]   Bankruptcy Rule 9024 states, as follows:

> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one-year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330. In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending.

Fed. R. Bankr. P. 9024.

the Court does not run afoul of the limitations on revoking a discharge under section 727. *See In re Filice*, 580 B.R. at 271 ("'Vacating' a discharge under Rule 60(a), as incorporated by Rule 9024, does not conflict with 'revoking' a discharge under § 727(d). The § 727(e) time limit on revoking a discharge for the blameworthy reasons specified in § 727(d) is not infringed when a court vacates a mistaken order of discharge.") (citations omitted).

The Court will address the merits of the Motions. It will first review the Motion to Amend. In doing so, the Court will review that motion as it relates to the Section 727(a)(4) Claim, and then as it relates to the Section 523(a)(2) Claim and the Section 523(a)(6) Claim. Thereafter the Court will consider the Motion to Dismiss.

## **Motion to Amend**

### *Section 727(a)(4) Claim*

The Plaintiffs maintain that the Debtor knowingly and fraudulently made false oaths in connection with the Bankruptcy Case, and in the District Court Action and that pursuant to section 727(a)(4)(A) of the Bankruptcy Code, the Court should deny the Debtor a discharge. *See* First Amended Complaint ¶ 20. In the First Amended Complaint, Plaintiffs plead their objection to the Debtor's discharge under section 727 in the Second Cause of Action. *See* First Amended Complaint ¶¶ 13-20. In short, the Plaintiffs maintain that the Court should deny the Debtor a bankruptcy discharge under section 727(a)(4)(A) because he knowingly and fraudulently made false oaths in connection with this bankruptcy case, and the District Court Action. *See* First Amended Complaint ¶ 20. In support of that claim, the Plaintiffs assert that

(i) Defendant signed his voluntary petition for bankruptcy and Statement of Financial Affairs on May 22, 2019, under penalty of perjury, and that in the Statement of Financial Affairs, he (a) misrepresented that his ownership value in Anago is $0.00, and (b) failed to disclose his ownership interest in Sushi Suki; and

(ii) Defendant had a practice of paying employees of Anago, including Plaintiffs, under the table in cash.

*Id.* ¶¶ 14-19.

In the Proposed Second Amended Complaint, the Plaintiffs purport to buttress the factual allegations underlying the Section 727(a)(4) Claim by alleging that the Debtor made a "false oath," by (i) making cash payments "under the table" pre-petition to the Plaintiffs, and (ii) falsifying entries in his voluntary petition for bankruptcy by: (a) listing "0" as the value of his interest in Anago and (b) failing to disclose his interest in Sushi Suki; and (iii) testifying in the District Court Action that he was the sole owner of Anago, when in fact his is only a 50% owner. *See* Proposed Second Amended Complaint ¶¶ 25-26, 28-29, 50-51.

As support for those claims, the Plaintiffs assert that in 2012, Debtor and his wife, Ms. Chen, formed Anago as a New York corporation and that at all times relevant to the complaint, the Debtor and Ms. Chen were officers and directors of Anago. *See id.* ¶¶ 34, 35. They maintain that as of the Filing Date, Anago was an operating and profitable company, and continued to operate profitably until the onset of the Covid 19 pandemic. *See id.* ¶ 36.[31] Plaintiffs assert that Debtor had a practice of paying employees of Anago including the Plaintiffs under the table in cash. *See id.* ¶ 29. Anago ceased operating in August 2020. *See id.* ¶ 38. As of the Filing Date, Debtor held a 50% interest in Anago (the "Anago Shares") and a 5% interest in Maggie Property 88, LLC ("Maggie LLC"). Ms. Chen held the balance of the interests in Anago and in Maggie LLC. *See id.* ¶¶ 31-33.

---

[31]    Plaintiffs assert that for tax year 2018, Anago reported gross sales of $1,545,340 and business income of $10,583, and for tax year 2019, Anago reported gross sales of $1,630,385 and business income of $3,015. *See* Proposed Second Amended Complaint ¶ 37.

On May 22, 2019, Debtor signed his voluntary petition for bankruptcy and Statement of Financial Affairs under penalty of perjury. *See id.* ¶ 24. In Schedule B to the Statement of Financial Affairs, Debtor disclosed his 50% interest in Anago, and 5% interest in Maggie LLC. Plaintiffs assert that the Debtor failed to disclose his ownership interest in Sushi Suki, *see id.* ¶ 27, and misrepresented the value of his Anago Shares as $0.00. *See id.* ¶ 26. Plaintiffs raise two points respecting Debtor's interest in Anago. They maintain that it is not possible for the stock of a corporation like Anago that was active and operating as of Filing Date to have no value. *See id.* ¶ 26. They also assert that during his deposition in the Bankruptcy Case, the Debtor admitted that he willfully perjured himself in the District Court Action when he falsely testified that he owned 100% of Anago, which they contend he did to protect his wife from being sued and to protect his assets from creditors. *See id.* ¶¶ 50, 51.

The Plaintiffs also complain that the Debtor caused his assets to be systematically transferred to Ms. Chen in an effort to put them out of the reach of his creditors. As support, they contend:

> Between January 2018 and the Filing Date, Ms. Chen withdrew at least $374,445.88 from the Anago account and that no less than 50% of those funds ($187,222.94) was income of the Debtor. *See id.* ¶¶ 46, 49.[32]
>
> On May 21, 2018, during the pendency of the District Court litigation, Debtor transferred $50,000 (the "2018 Transfer") from his Chase Bank savings account to Ms. Chen's Chase Bank savings account. *See id.* ¶ 44 (citing Exhibit 5 ¶ 30).

---

[32]    Specifically, the Plaintiffs assert:

> In 2018 (after the Creditors filed their District Court Action), Ms. Chen withdrew $224,445.88 from Anago's account.
>
> In 2019 through the Filing Date, Ms. Chen withdrew at least $142,000 from Anago's account and received an $8,000 wire transfer from Anago's account.

*Id.* ¶¶ 47, 48.

After the Filing Date, Debtor caused funds to be withdrawn and wire transferred from Anago to Ms. Chen (the "Anago-Ms. Chen Postpetition Transfers"), including but not limited to transfers aggregating $147,000, as follows:

$109,000 of withdrawals from Anago's account from January 6, 2020 through April 1, 2020, $91,000 of which was withdrawn by Ms. Chen, and $18,000 of which was ATM withdrawals.

$38,000 of online transfers made from Anago's account to Ms. Chen's account ending in x8905 from May 26, 2020 through June 3, 2020.

*Id.* ¶¶ 52-54 (citing Exhibit 6, ¶ 37).

The Plaintiffs maintain that the Anago-Ms. Chen Postpetition Transfers were distributed to Ms. Chen and were not used to pay Anago's payroll, or for any other business purpose of Anago, and that Debtor had a 50% interest Anago-Ms. Chen Postpetition Transfers, i.e., no less than $73,500. *See id.* ¶ 55, 56, 57. They contend that the Debtor's 50% share of Anago's profits is property of the estate under section 541(a)(6) of the Bankruptcy Code, and that instead of turning his share of Anago profits over to the Chapter 7 Trustee, as the Debtor should have done pursuant to Bankruptcy Code, the Debtor caused his share of Anago's profits, including but not limited to $73,500, to be transferred to Ms. Chen through the Anago-Ms. Chen Postpetition Transfers. *See id.* ¶ 58, 60. They also contend that the Anago-Ms. Chen Postpetition Transfers diminished the value of the Debtor's Anago Shares, which are property of the estate. *See id.* ¶ 61.

The Debtor argues that the Plaintiffs' allegation that he made a misrepresentation regarding Anago's value is "flat out ridiculous" and asserts that "it would be good news for many restaurant owners in New York City" if it were true that it is not possible for a corporation that was active and operating to have a value of $0. *See* Opposition at 9. He also argues that the alleged false statements fail to satisfy two of the elements for a section 727(a)(4) claim—namely, that they be made "in or in connection with the case, i.e., the bankruptcy case" and that they be

"material to the bankruptcy." *Id.* at 9. The Debtor maintains that he testified falsely regarding his

percentage ownership in Anago during the District Court Action and therefore that he did not

make the false statement "in or in connection with . . . the bankruptcy case." *Id.* at 9. He also

argues that his alleged false statements are "not material given that Anago's value is $0." *Id.*[33]

The Plaintiffs contend that tax returns provided by the Debtor during discovery support

their allegation that the value of Anago cannot be zero. Anago's 2018 tax returns show that it had

$92,030 worth in assets, $1,545,340 in gross sales and $10,583 in business income. *See* Reply at

12-13. Anago's 2019 tax returns show that Anago had $1,630,385 in gross sales and $3,015 in

business income. *See id.* at 14. They also say that the post-petition transfers from Anago to Ms.

Chen were distributions subject to the Debtor's 50% interest in Anago. The Plaintiffs contend

that instead of receiving 50% of those distributions and turning them over to the estate, that the

Debtor caused his shares of Anago profits to be distributed to his wife, thereby diminishing the

value of his shares in Anago. *See* Reply at 15-16.

The Plaintiffs make two arguments in respect of the Debtor's false testimony concerning

his wife's 50% ownership interest in Anago.

> First, they contend that the false statement in the District Court Action prejudiced
> the Plaintiffs, as creditors in the Bankruptcy Case, by rendering them unable to
> prosecute the correct defendants, i.e., the Debtor's wife. *See* Reply at 14-15.

> Second, they argue that the Debtor perjured himself *in* the Bankruptcy Case when
> he acknowledged that he made his false statement in the District Court Action.
> *See id.* at 15 ("Debtor perjured himself by stating during the [District Court
> Action] he lied to protect his wife."); *see id.* ("Debtor provided his false oath in
> the bankruptcy case, not in the [District Court Action] like Debtor[]

---

[33]   The Debtor draws a comparison to sections 152(2) and (4) of title 18 of the United States Code (the "Criminal
Code"), which contain similar language to that contained in section 727 of the Bankruptcy Code and penalize the
"crime of bankruptcy fraud" to argue that the Plaintiffs are "far from" alleging the crime of bankruptcy fraud has
been committed by the Debtor's false statement. *See* Opposition at 10.

suggest[s]").[34] Plaintiffs contend that the Debtor's false oath during the District Court Action was in direct connection with or regarding the Bankruptcy Case—in substance making the argument that the proceeding in which the false oath was made is irrelevant when it has some bearing on the Bankruptcy Case. *See id.* ("Debtors fail to realize that Debtor Heng Li Zhu['s] false oath happened in direct connection with the bankruptcy case"); *see id.* ("[Debtor] stating that he lied in the [District Court Action] deposition at the [Adversary] Proceeding is Debtor essentially perjuring himself *regarding* the bankruptcy case") (emphasis added).

Finally, the Plaintiffs argue that, in the aggregate, the Debtors' false statements are material because they "bear a relationship to the debtor's business transactions or estate, or concern the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Reply at 17.

A central purpose of the Bankruptcy Code "is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006). For the protection of creditors, however, section 727 of the Bankruptcy Code requires a denial of a discharge in certain circumstances. *See id.* Pursuant to section 727(a)(4)(A), a court can deny a debtor a discharge in bankruptcy if the debtor "knowingly and fraudulently, in connection with case . . . (A) made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A). To assert a claim for relief under section 727(a)(4), the objecting party must assert facts demonstrating that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Boyer*, 328 Fed. Appx. 711, 715 (2d Cir. 2009) (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000)); *see also In re Gordon*, 535 B.R. 531, 537 (S.D.N.Y 2015) ("[T]o establish a claim

---

[34]    In substance, Plaintiffs contend that the Debtor committed perjury in the Bankruptcy Case when he testified truthfully and acknowledged that he testified falsely in the District Court Action.

under Section 727(a)(4)(A), a plaintiff must prove a material false oath, knowingly and fraudulently made, in connection with a bankruptcy case.").

For these purposes, "fraudulent intent . . . can be established by a showing of actual fraud, through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements. *Jacob Agai, 291 Ave. P, LLC v. Antoniou (In re Antoniou)*, 515 B.R. 9, 24 (Bankr. E.D.N.Y. 2014). While ignorance or carelessness cannot support a finding of fraudulent intent, "multiple smaller falsehoods can aggregate into a 'critical mass' that does indicate fraudulent intent." *In re Gordon*, 535 B.R. at 537 (citing *In re Bressler*, 387 B.R. 446, 462 (Bankr. S.D.N.Y. 2008)). Multiple omissions may also support a finding of fraudulent intent where "there is something about the omitted information the debtor might have wanted to conceal." *See id.* (citing *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 564–65 (Bankr. S.D. Cal. 1996) ("[T]here must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate [through his multiple omissions].")). Finally, a statement is material when it is pertinent to "the Debtor's business transactions, concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008). "Omissions are material if they impact the trustee's ability to discover other assets, fully investigate pre-bankruptcy dealings, financial condition, and discovery of preference or avoidance actions." *See id.*

Applying these standards to the Proposed Second Amended Complaint, the Court finds that the Plaintiffs have not stated grounds for relief in support of the Section 727(a)(4) Claim for a number of reasons.

First, in paying his employees in cash under the table, the Debtor did not make a "false oath or account" in the Bankruptcy Case. Those actions have no bearing on whether Plaintiffs are entitled to relief under section 727(a). Moreover, the Plaintiffs' allegations with respect to the pre- and post-petition cash transfers by Anago to Ms. Chen may be relevant to the Chapter 7 Trustee's efforts to recover estate property, but do not support the Plaintiffs Section 727(a)(4) Claim.[35]

Second, the Debtor's false testimony in the District Court Action regarding his ownership interest in Sushi Suki cannot support the Section 727(a)(4) Claim since that testimony was not made "in or in connection with" the bankruptcy case. *See Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 694 (E.D.N.Y. 2014) ("The materially false statements recognized under this subsection may have been made as part of or omitted from the bankruptcy petition, schedules, statement of affairs or during examinations or the bankruptcy proceeding itself."); *see also Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 349 (Bankr. E.D.N.Y.) ("[T]he debtor must have presented or used, with intent to defraud, inflated or fictitious claims in a bankruptcy case.").

Third, Debtors' alleged misstatement regarding the value of the Anago Shares fails to support Plaintiffs' claims for relief because Plaintiffs have not alleged facts demonstrating that the Anago Shares had material value, let alone that the Debtor knew it, and made the statement with the intent to defraud or mislead the creditors. The Plaintiffs mistakenly equate taxable business income on a tax return with the value of stock in a restaurant corporation, without

---

[35]   On June 4, 2021, the Trustee sued the Debtor and Ms. Chen to avoid and recover the pre- and post-petition transfers identified by the Plaintiffs in their Proposed Second Amended Complaint. *See* Complaint, Piazza v. Zhu, No. 21-01145 (Bankr. S.D.N.Y. June 4, 2021), ECF No. 1. The Trustee settled that litigation in consideration for a payment of $100,000, payable in monthly installments of $10,000. *See* Chapter 7 Trustee's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for an Order Approving Stipulation Settling Adversary Proceeding, Piazza v. Zhu, No. 21-01145 (Bankr. S.D.N.Y. May 3, 2022), ECF No. 22; *see also* Stipulation of Settlement of Adversary Proceeding, No. 21-01145 (Bankr. S.D.N.Y. June 28, 2022), ECF No. 33.

regard to the corporation's liabilities or what a buyer would be willing to pay for such stock, considerations that would typically go into valuing a stock interest. *See In re Vecchitto*, 235 B.R. 231, 234-45 (Bankr. D. Conn. 1999), *aff'd*, 229 F.3d 1136 (2d Cir. 2000) ("[T]here are three principal approaches to be employed to determine [a stock's] fair market value: (1) component asset-based valuation, (2) cash-flow-based valuation and (3) market formula-based valuation.").

Finally, the Debtor disclosed his interest in the Anago Shares. In doing so, the Debtor afforded the Chapter 7 Trustee the opportunity to determine, for herself, whether the stock had any value to the estate. *Cf. In re Sawyer*, 130 B.R. 384, 394 (Bankr. E.D.N.Y. 1991) (denying debtor's discharge under section 727(a)(4) where the false oath regarding value of ownership in stock was made together with other omissions that amounted to concealment and prevented the Chapter 7 Trustee from discovering the debtor's assets and business dealings). Anago is a closely held restaurant corporation which the Debtor owns together with his wife. The Chapter 7 Trustee has not made any effort to sell the Debtor's interest in Anago for the benefit of the estate, likely because it has no value outside of the Debtor's and his wife's hands.

Based on the foregoing, the Court finds that it would be futile to grant the Plaintiffs leave to restate the Section 727(a)(4) Claim in the Second Amended Complaint because, as restated, it fails to state a claim for relief against the Debtor.

The Section 523(a)(2) Claim and 523(a)(6) Claim

The gravamen of the allegations in the Proposed Second Amended Complaint underlying the Section 523(a)(2) Claim and the Section 523(a)(6) Claim is that at all relevant times, the Debtor had the resources to comply with his financial and administrative obligations to the Plaintiffs under the FLSA and NYLL, but that he nonetheless refused to do so to their detriment, and employed a strategy pursuant to which to which he withheld information from the Plaintiff

32

to ensure that they would not learn of their rights, and the Debtor's obligations to them, under federal and state laws.

In support of those claims, the Plaintiffs allege that (i) they proved in the District Court Action that the Debtor willfully and maliciously injured them by denying them minimum wage and overtime pay in violation of the FLSA and NYLL, and through the other willful and malicious violations of the NYLL and the regulations promulgated thereunder; (ii) the Debtor engaged in schemes as part of a deliberate attempt to underpay the Plaintiffs and obtained services from Plaintiffs by willfully making false representations, and willfully circumventing overtime laws; and (iii) the Debtor deceived Plaintiffs with his "misstatements"—i.e., by failing to pay overtime wages and to provide time of hire notice and paystubs to Plaintiffs. *See* Proposed Second Amended Complaint ¶¶ 10, 13, 14. The Plaintiffs assert that, as the employer, the Debtor was tasked with accounting for the number of hours the Plaintiffs worked each week and that the Plaintiffs were dependent upon the Debtor for an accurate accounting of those hours. *See id.* ¶ 14. They maintain that they justifiably relied on the information the Debtor provided to them regarding their pay. *See id.*

Section 523(a)(2) Claim

As relevant, section 523(a) excepts from the discharge "any debt—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2)(A). "The three terms used in subsection (A) embody somewhat differing concepts, and Congress' use of the disjunctive 'or' evidences [an intent] to deny a discharge under any [such term.]" *Soliz v. Soliz (In re Soliz)*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996). "Though the elements of each overlap, they are distinct." *Heritage Equities, LLC v. Newman (In re Newman)*, 588 B.R. 281,

296 (Bankr. D. Conn. 2018); *see also Wang v. Guo (In re Guo)*, 548 B.R. 396, 398 (Bankr.

E.D.N.Y. 2016). Accordingly, the Court will treat them as separate causes of action. *See In re*

*Ippolito*, No. 12-70632 (AST), 2013 WL 828316, at *4 (Bankr. E.D.N.Y. Mar. 6, 2013) ("False

pretenses, false representation, and actual fraud represent three different concepts, and thus are

treated as three separate causes of action.").

In support of the Section 523(a)(2) Claim, the Plaintiffs say that they were "dependent

upon the Debtor for a true and correct accounting of hours and calculation of pay" and that the

Debtor deceived them with "his misstatements by failing to pay overtime wages and fail[ing] to

provide time of hire notice and paystubs to Plaintiffs." Proposed Second Amended Complaint ¶

14. They maintain that they "justifiably relied on Debtor's misstatements and omissions and

were damaged as a proximate result thereof by being deprived of the legally required wages for

their services." *Id.* Plaintiffs allege that "in the District Court Action the Court found . . . the

Debtor Defendant . . . liable for obtaining services from Plaintiffs through, and among other

violations, by willfully making false representations and willfully circumventing overtime laws."

*Id.* ¶ 15. From that, they conclude that "Debtor obtained services from Plaintiffs by false

pretenses, false representations and/or actual fraud and, therefore, the claims asserted against the

Debtor's by Plaintiffs in the FLSA Action [are] not dischargeable in bankruptcy pursuant to

Section 523(a)(2)(A) of the Bankruptcy Code." *Id.* ¶ 16. Thus, in assessing the adequacy of the

pleadings in support of the Section 523(a)(2) Claim, the Court must consider whether those

allegations demonstrate a false representation, actual fraud, or false pretenses by the Debtor. *See*

*In re Ippolito*, 2013 WL 828316, at *4 ("[The creditor] generally seeks relief under §

523(a)(2)(A); thus, this Court must evaluate [the creditor's] first cause of action under each

alternative prong.").

The Court undertakes that analysis below.

*False Representation*

For purposes of applying section 523(a)(2)(A), a false representation means that "1. defendant made a false or misleading statement; 2. with intent to deceive; 3. in order for the plaintiff to turn over money or property to the defendant." *Frishberg v. Janac* (*In re Janac* ), 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009); *see also In re Chase*, 372 B.R. at 129 ("A court can find a false representation if the plaintiff presents proof that the defendant (1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiff to turn over money or property to the defendant."). In short, under section 523(a)(2)(A), "a 'false representation' references an *expressed statement,* either oral or written, false and misleading and designed to deceive." *Vidomlanski v. Gabor (In re Gabor)*, No. 05-187719 (ALG), 2009 WL 3233907, at *4 (Bankr. S.D.N.Y. Oct. 8, 2009); *see also Bobilya Chrysler v. Gross (Matter of Gross)*, 175 B.R. 277, 283 (Bankr. N.D. Ind. 1994) (stating that causes of action for "false pretenses" and "false representations" under section 523(a)(2)(A) are two distinct actions; the former involves implied misrepresentations, while the latter deals with expressed, either oral or written, misrepresentations). For these purposes, an " 'intent to deceive' may be established through circumstantial evidence and inferred from the totality of the evidence presented." *Sandak v. Dobrayel* (*In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)) (citation omitted). Moreover, a plaintiff must also establish that its reliance was justifiable. *See id.*; *see also In re Gonzalez*, 241 B.R. at 71 ("To exempt a debt from discharge under Section 523(a)(2)(A), the non-debtor's reliance must be 'justifiable' under the circumstances.") (citing *Field v. Mans,* 516 U.S. 59 (1995)).

As noted above, the substance of the Plaintiffs' complaint is that the Debtor withheld

information from them when he breached the FLSA and NYLL by failing to provide and/or

display wage and overtime-related information to them. In interpreting the elements of section

523(a)(2)(A), "[t]he Court looks to the common law of torts, as embodied in the Restatement

(Second) of Torts." *In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017) (quoting *In re*

*Chase*, 372 B.R. at 130). As Chief Judge Glenn noted in *Deutsch*, "[o]missions of fact can

qualify as false representations under section 523(a)(2)(A): [a] false representation can be shown

through either an express statement or through an omission where the circumstances are such

that disclosure is necessary to correct what would otherwise be a false impression." *Id.* (quoting

S*ignature Bank v. Banayan (In re Banayan)*, 468 B.R. 542, 574–75 (Bankr. N.D.N.Y. 2012))

(internal quotation marks omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 529 (1976) ("A

representation stating the truth so far as it goes but which the maker knows or believes to be

materially misleading because of his failure to state additional or qualifying matter is a

fraudulent misrepresentation."). But those principles are not applicable here, as the Plaintiffs do

not complain that the Debtor made any expressed oral or written misrepresentations to them. The

Debtor's failure to comply with the FLSA and NYLL does not constitute a "false representation"

in support of the Section 523(a)(2)(A) Claim.[36] Moreover, contrary to the Plaintiffs' assertions,

---

[36]    The case of *In re Ippolito* is instructive. In that case, American Honda Finance Corporation ("Honda") was party to a Wholesale Finance Agreement with Crazy Freddy's Motorsports Inc. ("Crazy Freddy's") pursuant to which Honda made periodic advances to Crazy Freddy's for the purchase of new and used motorcycles from Honda. *See In re Ippolito*, 2013 WL 828316, at *1. As security for those advances, Crazy Freddy gave Honda a security interest in the purchased inventory. The debtor ("Ippolito") personally guaranteed Crazy Freddy's performance under the financing agreement. *Id.* Eventually, Crazy Freddy defaulted under the financing agreement and Ippolito went into bankruptcy. Honda sued to deny Ippolito the discharge of his debt to Honda (the "Honda Indebtedness") under section 523(a) of the Bankruptcy Code. The underlying complaint (the "Honda Complaint") asserted four claims for relief under section 523(a), including a claim to deny the discharge of the Honda Indebtedness under section 523(a)(2)(A). *Id.* Ippolito filed a Rule 12(b)(6) motion to dismiss the Honda Complaint. As relevant, the bankruptcy court granted the motion to dismiss the claim under section 523(a)(2)(A) on the grounds that Honda failed to allege facts demonstrating that an express misrepresentation by Ippolito, either written or oral. *Id.* at *5. The bankruptcy court found that:

the District Court did not find that the Debtor willfully made false representations to them.

Rather, as noted above, the Verdict Forms included findings of fact solely relating to: (i) the

period of Plaintiffs' employment by Anago and the average weekly number of hours Plaintiffs

worked at Anago; (ii) the wages paid by the Debtor to the Plaintiffs; and (iii) the Debtor's failure

to provide pay stubs and adequate wage notices to the Plaintiffs, and the Debtor's bad faith in

violating the federal and state wage laws. *See supra* nn. 10-12. The Plaintiffs have failed to plead

a plausible *prima facie* case for false representation under section 523(a)(2)(A). *See In re*

*Ippolito*, 2013 WL 828316, at *5 ("Here, [the creditor] has failed to identify an express

misrepresentation made by [the debtor] either written or oral. Accordingly, it is clear that [the

creditor] has failed to plead a plausible *prima facie* claim for false representation."). It would be

futile to authorize the Plaintiffs to amend the First Amended Complaint to assert a claim for false

representations under section 523(a)(2) of the Bankruptcy Code.

*Actual Fraud*

Courts typically rely on the common law of torts, as embodied in the Restatement

(Second) of Torts, in construing actual fraud. *See, e.g.*, *Weiss v. Alicea (In re Alicea)*, 230 B.R.

492, 500 (Bankr. S.D.N.Y. 1999) (citing cases); *see also* RESTATEMENT (SECOND) OF TORTS §

525 (1976) (The elements of common law fraud are (1) a misrepresentation, (2) fraudulent intent,

or scienter, (3) intent to induce reliance, (4) justifiable reliance, and (5) damage.). Thus, to state a

claim for "actual fraud" under section 523(a)(2)(A), the Plaintiffs must allege facts

---

> Accepting all the factual allegations in the Complaint as true and drawing all inferences in favor of
> Honda, at best, Honda has demonstrated that: 1) Ippolito has failed to notify Honda of any
> discrepancies in the Dealer Statements; 2) Ippolito failed to report to Honda and/or omitted
> information regarding vehicles sold "out of trust"; and 3) Ippolito failed to keep complete and
> accurate records, all of which Honda's auditors failed to discover until February 2009. None of the
> foregoing qualifies as an express misrepresentation or statement.

*Id.* at *5 n.7.

demonstrating the "five fingers of fraud: (1) that the [Debtor] made a false representation, (2) knowing it to be false at the time it was made, (3) with intent to deceive the [Plaintiffs], and (4) that the [Plaintiffs] justifiably relied on the representation, and (5) the [Plaintiffs] sustained damages that were proximately caused by the false representation." *See In re Janac*, 407 B.R. at 546; *see also Shearman Lehman Hutton v. Schulman (In re Schulman)*, 196 B.R. 688, 693 (Bankr. S.D.N.Y. 1996).

The Plaintiffs allege that the Debtor "deceived Plaintiffs with his misstatements by failing to pay overtime wages and fail[ing] to provide time of hire notice[s] and paystubs to Plaintiffs." Proposed Second Amended Complaint ¶ 14. However, as previously discussed, the failure to pay overtime wages or to provide time of hire notices or paystubs are omissions that do not constitute express misrepresentations or statements. *Cf. In re Ippolito*, 2013 WL 828316 at *5; *see also supra* n.34. In support of this claim, the Plaintiffs also allege that the District Court found that the Debtor was "liable for obtaining services from Plaintiffs through, and among other violations, by willfully making false representations[.]" Proposed Second Amended Complaint ¶ 15. However, the Plaintiffs fail to allege any facts supporting that contention, and the Judgment and the Verdict Forms annexed to the complaint do not support Plaintiffs' allegation. As previously noted, they do not reflect any statements or representations by the Debtor at all, much less any false representations or misrepresentations. *See* Judgment, Verdict Forms. The Plaintiffs have failed to allege facts which, if accepted as true, demonstrate any element of "actual fraud" under section 523(a)(2)(A), let alone states a claim that the Debtor actually defrauded them. The Plaintiffs have failed to plead a plausible *prima facie* case for fraud under section 523(a)(2)(A). It would be futile to authorize them to amend the First Amended Complaint to assert a claim for fraud under section 523(a)(2) of the Bankruptcy Code.

*False Pretenses*

"False pretenses" differ from "false representations" because they involve conduct, not express oral or written misrepresentations. *See In re Chase*, 372 B.R. at 128 ("[A] false pretense is designed to convey an impression without an oral representation.") (citation omitted); s*ee also Matter of Gross*, 175 B.R. at 284 (noting that "false pretenses" involve implied misrepresentations, in contrast to a "false representation" involving an express misrepresentation, oral or written). "False pretenses" can consist of either "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property," *In re Chase*, 372 B.R. at 128 (quoting *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000)), or an implied misrepresentation or conduct intended to create a false impression. *See id.* (citing V*oyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005)); *see also Evans v. Dunston (In re Dunston)*, 117 B.R. 632, 641 (Bankr. D. Colo. 1990), *aff'd in part, rev'd in part*, 146 B.R. 269 (D. Colo. 1992) (noting that the term "false pretenses" has been defined as "[u]sually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposefully create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor."). The "[f]ailure to disclose material facts on which a transaction depends constitutes false pretenses within the statute." *In re Soliz*, 201 B.R. at 369 (Bankr. S.D.N.Y. 1996).[37] To state a claim under section

---

[37]    On this point, both *Ippolito* and *Bombardier Capital, Inc. v. Baietti (In re Baietti),* 189 B.R. 549 (Bankr.D.Me.1995), are instructive. In *Baietti*, the debtor, was in the business of selling boats. He failed to disclose to his lender that a number of boats on his property, appearing as unsold inventory, had been sold. *Id.* at 554. The creditor routinely inspected Baietti's boatyard, since Baietti was required under the loan documents to immediately notify and pay the creditor a proportionate amount upon sale of a boat. *Id.* Baietti defended by arguing that he did not affirmatively misrepresent the fact that several boats on his property had been sold; rather, he was merely a "silent onlooker" while the creditor derived false information from inspecting the boatyard*. Id.* The court held that the false impression created by Baietti's failure to disclose the sale of certain of the boats constituted false pretenses under section 523(a)(2)(A). *Id.* at 555. In *Ippolito*, after rejecting Honda's claim of "false representation", the court found that Honda "narrowly but adequately plead that Ippolito knowingly and willingly failed to disclose to Honda the sale of vehicles "out of trust" in violation of Ippolito's duty under the terms of the Guaranty, in order to induce

523(a)(2)(A) that the Judgment Debt is nondischargeable as a debt for money obtained

by false pretenses, the Plaintiffs must allege facts demonstrating (1) an implied misrepresentation

or conduct by the defendant; (2) promoted knowingly and willingly by the defendant; (3)

creating a contrived and misleading understanding of the transaction on the part of the plaintiff;

(4) which wrongfully induced the plaintiff to advance money, property, or credit to the

defendant. *In re Chase*, 372 B.R. at 128 (citing *In re Dobrayel*, 287 B.R. at 12); *see also In re*

*Hambley*, 329 B.R. at 396 (same).

In the Proposed Second Amended Complaint, the Plaintiffs allege that the Debtor's

policy was to underpay his employee and that he maintained that policy through a scheme

pursuant to which he withheld wage and hour notices at the time he hired them and obscured the

number of hours his employees worked and wages they actually earned by withholding paystub

statements on each payday, all in violation of their obligations under the FLSA and NYLL. *See*

Proposed Second Amended Complaint ¶ 14. They argue that they have alleged a claim of false

pretenses under section 523(a)(2) because, as established by the Judgment, the Debtor (1) failed

to pay the Plaintiffs the minimum and overtime wage required by the FLSA and NYLL; (2)

failed to pay the Plaintiffs the spread of hours' wages they are entitled to when they work more

than ten hours, and (3) failed to comply with his duty under the NYLL to provide Plaintiffs with

annual wage notices and weekly wage statements. *See* Reply at 7-8. In substance, the Plaintiffs

argue that by withholding information from the Plaintiffs regarding their rights to over-time

wages under the NYLL, the Debtor caused them to unknowingly "advance money to Defendant

---

Honda to continue to make advances to Crazy Freddy's; these continued advances are alleged to have personally
benefited Ippolito by allowing him to "extend the time during which Crazy Freddy's and Ippolito engaged in their
criminal activity and corporate and personal malfeasance," and resulted in or increased the amount of loss suffered
by Honda." 2013 WL 828316 at * 6.

by accepting employment at a rate of pay less than they would otherwise have been entitled to under the law." Reply at 8.

However, those allegations fall short of demonstrating "conduct intended to create a false impression" or a "misleading understanding." While the Debtor failed to notify Plaintiffs of rights afforded to them under federal and state labor laws, the Debtor's actions do not amount to the knowing creation of a false impression or misleading understanding—that the Debtor intended to leave Plaintiffs with the impression that they would be paid a certain amount if they chose to work with the Debtor or that Plaintiffs would be paid what they were legally entitled to be paid. *See In re Ippolito*, 2013 WL 828316, at *4 ("To satisfy . . . Rule 9(b), state of mind can be averred generally, [but] must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations . . . [P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent.").

Moreover, Plaintiffs do not allege that they entered into their employment with the Debtor because of the Debtor's actions or that this alleged scheme was meant to or did induce Plaintiffs to extend their services when they otherwise would not have. *See In re Dobrayel*, 287 B.R. at 12 ("false pretense is the product of multiple events, acts, or representations undertaken by the debtor which purposely create a contrived and misleading understanding of a transaction that . . . wrongfully induces the creditor to extend [services] to the debtor."); *see also In re Banayan*, 468 B.R. 542, 574 (Bankr. N.D.N.Y. 2012) ("To prove that a debt arose from false pretenses, the plaintiff must show . . . conduct by the debtor . . . which wrongfully induced [the] plaintiff to advance [services] to the debtor."). Because Plaintiffs' have failed to allege facts demonstrating that the Debtor's conduct and omissions created a "false impression" that "wrongfully induced" Plaintiffs to extend their services to the Debtor, Plaintiffs have failed to

plead a plausible *prima facie* case for false pretenses under section 523(a)(2)(A). It would be

futile to authorize them to amend the First Amended Complaint to assert a claim for false

pretenses under section 523(a)(2) of the Bankruptcy Code.

To state a claim for relief under section 523(a)(2) of the Bankruptcy Code, the Plaintiffs

must demonstrate that, by words or conduct, the Debtor misrepresented facts to the Plaintiff in

order to mislead or defraud them. As reflected in the Proposed Second Amended Complaint,

Plaintiffs' theory of the case (as it was in the District Court Action) is that the Debtor unlawfully

withheld information from them. They do not allege that the Debtor misrepresented facts to

them, and the record is devoid of any facts demonstrating such misrepresentation. The Court

denies the Plaintiffs' Motion to Amend the First Amended Complaint to add the Section

523(a)(2) Claim. It would be futile to grant the Plaintiffs leave to assert the Section 523(a)(2)

Claim, because it fails to state a claim for relief.  *See Williams v. Citigroup Inc.*, 659 F.3d 208,

214 (2d Cir. 2011) ("It is well established that 'leave to amend need not be granted where the

proposed amendment would be futile.' ") (quoting *Advanced Magnetics, Inc. v. Bayfront*

*Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997)); *see also Thea v. Kleinhandler*, No. 13-cv-4895

(PKC), 2014 WL 3812231, at *6, 9 (S.D.N.Y. Aug. 1, 2014) (denying motion to amend on basis

of futility); *Carroll v. Trump*, No. 22-CV-7311 (LAK), 2022 WL 748128, at *4, 10 (S.D.N.Y.

2022) (same); *Goldberg v. Cablevision Systems Corp.*, 193 F. Supp. 2d 588, 599 (E.D.N.Y.

2002) (same).

Section 523(a)(6) Claim

In the First Amended Complaint, in support of their Section 523(a)(6) Claim, and as

relevant, the Plaintiffs allege, as follows:

9. As proved in the District Court Action, Plaintiffs (1) were not paid the minimum
wage and overtime wage required by the FLSA and NYLL; (2) were not paid spread

of hours wages when their workdays were longer than ten hours as required by the
NYLL; and (3) were not provided with annual wage notices and weekly wage
statements as required by the NYLL.

10. Debtor's failure to pay Plaintiffs at the minimum wage rate and at the overtime
wage rate, failure to pay spread of hours pay, and failure to provide wage statements
and notices were intentional and wrongful acts which caused Plaintiffs injury in the
form of lost wages. Debtor's violations of the FLSA, NYLL, and NYCRR were
done without just cause or excuse. Debtor had the ability to comply with the FLSA,
NYLL, and NYCRR and pay Plaintiffs the legally required wages and not otherwise
harm them by engaging in fraudulent conduct, but chose not to.

11. Debtor's failure to pay Plaintiffs properly and in accordance with the FLSA,
NYLL, and NYCRR caused a willful and malicious injury to them such that debts
owed by Debtor to Plaintiffs, including attorneys' fees and costs to which they are
entitled under the FLSA and NYLL should not be discharged. Therefore, pursuant
to 11 U.S.C. § 523(a)(4) [sic], Debtor is not entitled to a discharge of such debts.

First Amended Complaint ¶¶ 9-11. In the Second Amended Complaint, they make the identical

allegations in support of the Section 523(a)(6) Claim. *See* Proposed Second Amended

Complaint. ¶¶ 19-21.

Section 523(a)(6) of the Bankruptcy Code bars the discharge of any debt that is the

product of "willful and malicious injury by the debtor to another entity or to the property of

another entity." 11 U.S.C. § 523(a)(6). The terms "willful" and "malicious" are separate and

distinct elements of a claim under the statute that "should not be joined together into one

amorphous standard." *In re Bressler*, 387 B.R. at 454; *see also Barclays American/Business

Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (The terms 'willful' and

'malicious' "should not be lumped together to create an amorphous standard to prevent discharge

from any conduct that may be judicially considered to be deplorable."). As used in section

523(a)(6), "[t]he term willful ... means deliberate or intentional." *Navistar Fin. Corp. v.

Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir.1996) (internal quotation marks omitted); *see also

Ball v. A.O. Smith Corp.*, 451 F.3d at 69 ("[T]he word 'willful' indicates 'a deliberate or

intentional *injury*, not merely a deliberate or intentional act that leads to injury.' ") (quoting

*Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). The term malicious means "wrongful and

without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re*

*Stelluti*, 94 F.3d at 87-88; *see also Ball v. A.O. Smith Corp.*, 451 F.3d at 69. Malice may be

constructive, i.e., implied, by the "acts and conduct of the debtor in the context of [the]

surrounding circumstances." *In re Krautheimer*, 241 B.R. 330, 341 (Bankr. S.D.N.Y. 1999)

(quoting *In re Stelluti*, 94 F.3d at 88). A specific intent to harm or injure is not required. Rather,

"[m]alice is implied when anyone of reasonable intelligence knows that the act in question is

contrary to commonly accepted duties in the ordinary relationships among people, and injurious

to another." *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 51 (Bankr. S.D.N.Y.

1998) (citations omitted) (internal quotation marks omitted).

To state a claim for relief under section 523(a)(6), a plaintiff must allege facts

demonstrating "first, that the debtor acted willfully, second, that the debtor acted maliciously,

and third, that the debtor's willful and malicious actions caused injury to the creditor or its

property." *In re Salim*, No. 13-42974 (ESS), 2015 WL 1240000, at *22 (Bankr. E.D.N.Y. Mar.

16, 2015). The party objecting to the discharge of a claim under section 523(a)(6), must prove

the elements of the claim by a preponderance of the evidence. *Cocoletzi v. Orly (In re Orly),* No.

15-11650 (JLG), 2016 WL 4376947, at *3 (Bankr. S.D.N.Y. Aug. 10, 2016) (internal citations

omitted).

The Plaintiffs were injured as a consequence of the Debtor's violations of the FLSA and

NYLL. It should have been clear to the Debtor that by withholding information necessary for

Plaintiffs to make a true and correct accounting of the hours they worked, and of the wages

owed, that the Plaintiffs would suffer injury. *See In re Orly*, 2016 WL 4376947, at *7

44

("[C]onduct which is certain or almost certain to cause financial harm to the creditor in addition

to the debtor's knowledge that he or she is violating the creditors legal rights, when taken

together, is sufficient to establish a claim under section 523(a)(6).") (quoting *Johnson v. Logue*

*(In re Logue)*, 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003)). The Plaintiffs contend that they have

alleged facts in support of the Proposed Second Amended Complaint that demonstrate that the

Debtor acted willfully in underpaying the Plaintiffs in violation of the FLSA and NYLL. The

Debtor does not dispute that contention. In support of the Section 523(a)(6) Claim, the Plaintiffs

allege that (i) the Debtor engaged in a "deliberate attempt to underpay the Plaintiffs;" that the

Debtor "had the ability to comply and pay the legally required wages and not otherwise harm the

Plaintiffs but chose not to;" and that the Debtor violated the FLSA and NYLL "without just

cause or excuse." *See* Proposed Second Amended Complaint ¶¶ 13, 14, 20. The Court finds that

the Plaintiffs have met their burden to allege that the Debtor acted "willfully" in violating the

FLSA and NYLL. Moreover, as noted, the Jury awarded Plaintiffs liquidated damages under the

NYLL. *See* Judgment at 2. Liquidated damages are awarded under the NYLL "only where a

violation is willful." *In re Qiao Lin*, 576 B.R. at 55 ("These grounds are substantially identical to

the grounds that support a finding of willfulness for purposes of Section 523(a)(6)."); *see also*

*Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) ("A violation of the

New York Labor Law is willful, warranting an award of 25% liquidated damages in addition to

lost wages, where the employer 'knowingly, deliberately, [or] voluntarily' disregards its

obligation to pay wages."); *P & L Grp., Inc. v. Garfinkel*, 150 A.D.2d 663, 541 N.Y.S.2d 535,

537 (1989). Therefore, Plaintiffs have sufficiently alleged "willfulness" in support of the Section

523(a)(6) Claim.

The Debtor contends that the Section 523(a)(6) Claim fails to state a claim for relief because the Plaintiffs have failed to allege facts demonstrating that he acted maliciously when he violated the federal and state wage laws. *See* Opposition at 7. The Plaintiffs dispute that contention. They assert that they have stated a claim for relief against the Debtor under section 523(a)(6) because the Judgment, alone, establishes that the Debtor acted with malice when he willfully violated the federal and state wage laws. *See* Reply at 10-12. ("Ample case law establishes that a willful violation of the FLSA, or an otherwise willful refusal to pay an employee wages, can support a finding of non-dischargeability in bankruptcy pursuant to Section 523(a)(6).").

The Court finds no merit in that argument. First, the Judgment and the Jury Verdict Forms provide no support for the Plaintiffs' claim because they contain no facts demonstrating that the Debtor acted maliciously when he willfully violated the wage laws. Moreover, "[a]s a general rule**,** an intentional breach of statutory duties [under the FLSA and NYLL] by a debtor, whose conduct is clearly motivated by the prospect of financial gain, is not sufficient alone to imply malice." *In re Orly*, 2016 WL 4376947, at *6 (citing *In re Luppino*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)). That is the case because malice is not an element of a violation of the NYLL. *See In re Qiao Lin*, 576 B.R. at 60; *see also Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d at 309 ("No finding of malice or bad faith, however, is necessary [under the NYLL]."). Moreover, the case law is clear that willfulness is considered a separate and distinct element from maliciousness, and maliciousness is found, not solely on the basis of a willful refusal to pay an employee wages but from a willful refusal to do so without just cause or excuse and some other additional aggravating conduct. For example, in *In re Qiao Lin*, 576 B.R. 32, the court considered whether a default judgment entered by the district court against a debtor, president of

46

a restaurant corporation, for claims under the FLSA and NYLL was nondischargeable under section 523(a)(6) of the Bankruptcy Code. The default judgment was based on an unopposed motion for summary judgment which asserted that the debtor-employer willfully circumvented minimum wage and overtime laws, willfully falsified pay stubs by reporting incorrect hours worked, willfully failed to post lawfully required notices concerning federal and state minimum wage protections or otherwise to inform the plaintiffs of those protections, willfully failed to provide the plaintiffs with notices required under the NYLL, willfully retained portions of the plaintiffs' tip earnings and unlawfully dismissed the plaintiffs following their complaints. *See id.* at 38. The Court found that alone, those allegations did not state a claim for relief under section 523(a)(6). However, in support of that claim for relief, the plaintiffs also alleged that the debtor knowingly and intentionally fired two employees after they objected to the debtor's violations of the FLSA and posted anti-union posters in the workplace in order to intimidate his employees into abandoning their legal rights. *See id.* at 37. In that light, the bankruptcy court concluded that there was "substantial plausible evidence in the record that supports the conclusion that [the debtor] acted maliciously." *See id.* at 38. In *In re Orly*, the plaintiffs likewise asserted that, as a practice, the defendant violated the wage and hour laws. This Court found that in demonstrating that, in addition to the violations of the wage and hour laws, the defendant employer failed to reimburse the employees for the costs and expenses they incurred in purchasing and maintaining equipment and tools of the trade required to perform their jobs, the plaintiffs alleged the malice necessary to state a claim under section 523(a)(6) of the Bankruptcy Code. Finally, in *In re Altendorf*, the plaintiffs worked as commercial harvesters through the federal H-2A guestworker visa program. Pre-petition, they brought an action against the debtor seeking, among other things, damages for violations of the FLSA and North Dakota state wage law. Post-petition, the

plaintiffs commenced an action seeking a determination that their claims against the debtor were

excepted from discharge under section 523(a)(6). In support of their contention that the debtor

willfully and maliciously deprived them of wages and overtime payments, they alleged that the

debtor intentionally established a scheme by which she deliberately obtained labor through

threats of financial harm and failed to pay plaintiffs wages to which debtor knew plaintiffs were

entitled. *See Murray v. Altendorf (In re Altendorf)*, No. AP 15–07003, 2015 WL 4575219, at *7

(Bankr. D.N.D. July 29, 2015). In part, the court found that because those allegations went

beyond a mere breach of the statute, the plaintiffs plausibly alleged that the debtor acted

maliciously. *See id.*[38]

---

[38]    The cases cited by Plaintiffs do not support their contention that a willful failure to pay an employee wages without just cause and excuse alone is enough to discharge a debt for unpaid wages under section 523(a)(6) of the Bankruptcy Code.

    The case *In re Makozy* is directly contrary. There, the court noted that the standard for willfulness under the FLSA and section 523(a)(6) are incongruent and found that the district court's determination that the debtor willfully violated the FLSA was not dispositive of whether the same actions support a finding of "willfulness" under section 523(a)(6). Looking to the findings supporting the district court's conclusion that the actions were willful under the FLSA to determine if they satisfied the standard under section 523(a)(6), the court found a genuine dispute regarding whether the debtor acted willfully, did not reach the question of maliciousness and denied the plaintiff's request for summary judgment. *See In re Makozy*, No. 13-26231 (CMB), 2013 WL 9663062, at *3 (Bankr. W.D. Pa. Sept. 9, 2014).

    In *In re Silva*, the debtor, who employed workers to provide cleaning services to his sole corporate client, intentionally failed to pay them their wages, claiming that he was unable them because the corporate client failed to pay him all it owed him, missing over $30,000 in payments. In concluding that the debtor's conduct was malicious, the court found that he had, in fact, been paid by his corporate client but diverted the revenue to his personal expenses instead of compensating his employees, indicating he had no just cause or excuse for his willful failure to pay his workers their wages. *See In re Silva*, No. 12-17413 (WCH), 2014 WL 217889, at *10 (Bankr. D. Mass. Jan. 21, 2014).

    In *In re Defusco*, the court found that the plaintiff sufficiently stated a claim for relief under section 523(a)(6) where he alleged that the debtor, who operated a bakery, knowingly underpaid him, failed to withhold taxes and retaliated against him for reporting the unsafe working conditions to the Occupational Safety and Health Administration, after injuring himself on the job, by firing him. *See In re Defusco*, 500 B.R. 664, 669-70 (Bankr. D. Mass. 2013).

    In *In re Ruhland*, the debtor consistently failed to pay the plaintiff (a painter), despite promises and representations that he would. After quitting once, the plaintiff returned to work after the debtor promised to pay the plaintiff everything owed to him and agreed on a set wage moving forward. After the employee quit a second time, the debtor continued to string him along, going so far as to set a place for them to meet so the debtor could pay him, but failing to follow through. The court found that the debtor acted "deceitfully" and stole the value of the plaintiff's services, "gambling that his illegal conduct would not be brought to the attention of the Attorney General because of

There are no allegations in support of the Section 523(a)(6) Claim in the Proposed

Second Amended Complaint that support the Plaintiffs' assertion that the Debtor acted

maliciously in breaching the FLSA and NYLL. Accordingly, it would be futile to authorize them

to amend the Section 523(a)(6) Claim as requested in the Motion to Amend, because, as

amended, the Section 523(a)(6) Claim would fail to state a claim for relief against the Debtor.

The Court denies the Plaintiffs' Motion to Amend the Section 523(a)(6) Claim.

## Motion to Dismiss

The Court now considers the Debtor's Motion to Dismiss, which it construes as a motion

for judgment on the pleadings, in respect of the First Amended Complaint.

Plaintiffs' first cause of action is the Section 523(a)(6) Claim. The claim as alleged in the

First Amended Complaint does not substantially or materially differ from the claim as alleged in

the Second Amended Complaint. Plaintiffs allege that they were not paid the minimum wage and

overtime wage requires by the FLSA and NYLL, were not paid spread of hours wages, and were

not provided with annual wage notices and weekly wage statements as required by the NYLL.

*See* First Amended Complaint ¶ 9. They allege that the failure to comply with those statutory

requirements were intentional and wrongful acts which caused Plaintiffs' injury in the form of

lost wages. *See id.* ¶ 10. They allege that the violations were done with just cause or excuse

---

the Plaintiff's status as an undocumented worker." *In re Ruhland*, No. 11-19510 (JNF), 2013 WL 1088737, at *10-11 (Bankr. D. Mass. Mar. 13, 2013). Moreover, the court found that the debtor had been paid for the painting services performed by his workers but elected to use the money for purposes other than paying his workers. *See id.* at *12.

In *In re Jercich*, the court credited the state court findings that the debtor had the "clear ability" to pay the plaintiff his wages when they were due, but willfully "chose not to" and instead used the money for his own personal benefit by making a "wide variety of personal investments, including a horse ranch," which amounted to a separate violation and misdemeanor under California law. *See In re Jercich*, 238 F.3d 1202, 1204, 1207 (9th Cir. 2001). The state court had also found that the debtor's acts amounted to oppression under the California Civil Code, which requires "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *See id.* at 1207. The court concluded that "these state court findings are sufficient to show that the injury inflicted by [the debtor] was malicious under § 523(a)(6)." *See id.* at 1209.

because the Debtor had the ability to comply with the laws and pay the legally required wages and not otherwise harm Plaintiffs but chose not to. *See id.* Plaintiffs allege that the Debtor's failure to pay Plaintiffs properly in accordance with the FLSA, the NYLL and the regulations promulgated thereunder caused willful and malicious injury and that the debts owed by the Debtor should not be discharged. *See id.* ¶ 11. Lastly, they allege that the Debtor is jointly and severally personally liable under the New York Business Corporation Law for all debts, wages and salaries due and owing to any of its workers because he is among the ten largest shareholders of Anago. *See id.* ¶ 12.

As discussed above, Plaintiffs have not stated a claim for relief under section 523(a)(6) of the Bankruptcy Code because they have not sufficiently alleged maliciousness. Because the Court found that Plaintiffs failed to state a claim for relief under section 523(a)(6) in the Proposed Second Amended Complaint, it follows that the First Amended Complaint, which makes the same allegations, must be dismissed for failure to state a claim. The Court grants the Debtor's motion for judgment on the pleadings.

Plaintiffs' second cause of action is the Section 727(a)(4) Claim. They allege that the Debtor misrepresented the value of Anago when it stated its value is $0, which is not possible for a corporation that is still active. *See* First Amended Complaint ¶ 16. They allege that the Debtor admitted in his deposition that he owns Sushi Suki but failed to disclose that interest in Sushi Suki in his Schedules. *See id.* ¶¶ 17-18. They also allege that the Debtor had a practice of paying employees of Anago under the table in cash. *See id.* ¶ 19. For those reasons, Plaintiffs assert that the Debtor is not entitled to a discharge. *See id.* ¶ 20. For the same reasons these allegations failed to state a claim for relief in the Proposed Second Amended Complaint, they fail in the First

Amended Complaint. Accordingly, the Court grants the Debtor's motion for judgment on the pleadings and dismisses the Section 727(a)(4) Claim.

It is usual practice upon granting a motion to dismiss to allow leave to replead. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also In re Rifkin*, 142 B.R. 61, 68 (Bankr. E.D.N.Y. 1992) ("Complaints that are dismissed under Fed.R.Civ.P. 8, 9, and 12(b)(6) are 'almost always' dismissed with leave to amend.") (citing *In re Kelton Motors, Inc.*, 121 B.R. 166 (Bankr. D. Vt. 1990)). This practice extends to motions for judgment on the pleadings under Rule 12(c). *See Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 441 (S.D.N.Y. 2010). However, leave to replead is not typically granted where doing so would be futile. *See Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.,* 292 F. Supp. 2d 535, 555 (S.D.N.Y. 2003); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47-48 ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). In denying Plaintiffs' Motion to Amend above, the Court finds that it would be futile to grant leave to restate the Section 727(a)(4) Claim and Section 523(a)(6) Claim. Accordingly, the Court dismisses both claims, without leave to replead.

## Conclusion

For the reasons set forth above, the Court denies the Plaintiffs' Motion to Amend, and grants the Debtor's Motion to Dismiss, without leave to replead.


IT IS SO ORDERED.

Dated: New York, New York
        August 12, 2022


                                        /s/ *James L. Garrity, Jr.*
                                        Hon. James L. Garrity, Jr.
                                        U.S. Bankruptcy Judge

51